MANSFIELD, FREESE & CO. *v.* DUDGEON & GORDON.

*(Circuit Court, W. D. Michigan, S. D.* November 26, 1880.)

1. NEW TRIAL—SURPRISE AND NEWLY-DISCOVERED EVIDENCE.

Motion for new trial upon the grounds of surprise and newly-discovered evidence granted under the circumstances of this case, where the same was not brought to a hearing until after the expiration of 11 years from the time it was entered.—[ED.

*Assumpsit.* Motion for New Trial.

*E. S. Eggleston,* for plaintiffs.

*Chas. H. Stewart* and *Hughes, O'Brien & Smiley,* for defendants, on the argument of motion.

WITHEY, D. J. In November, 1869, this cause was tried and a verdict for plaintiffs rendered for over $6,000. A motion for a new trial was then entered, but has never been brought to a hearing until now, after eleven years have expired. Ordinarily such delay would be sufficient reason for dismissing the motion, for without very good grounds for justification no party ought to be forced to retry his case at so remote a day that it may be presumed difficult to obtain the evidence given upon the former trial. But the fact that defendants' attorney, soon after the trial, became and continued seriously ill for a long period, and became a confirmed invalid, unable to attend to the ordinary duties of an attorney, operates as some excuse for delay. It appears, also, that two of the plaintiffs, Mansfield and Freese, were, in 1872, adjudicated bankrupts, and that their assignee has never entered an

appearance in the case; and, finally, that Mansfield died not long after his bankruptcy. There has been no attempt to move in the case by either party until proceedings were taken a short time since in behalf of surviving plaintiffs to enter judgment on the verdict, which was met by this old motion for a new trial.

The grounds of surprise and newly-discovered evidence are the principal and only ones I shall consider, and I am of opinion, under the circumstances, that the question whether these grounds are sufficient should be regarded as if the motion had been heard within a month after it was entered. The question turns upon whether the newly-discovered evidence ought, by diligence, to have have been discovered before the trial, and whether it is of sufficient importance to probably change the result upon another trial. The corn which is the subject of the suit, and which plaintiffs sold and delivered to defendants under a contract, had most of it arrived at Cairo, Illinois, on the eighteenth of April, 1865, and was intended to be sold at that place by defendants to the general government, and be inspected by government inspectors. Defendants did not pay in full for the corn, as agreed; they claimed part of it was not sound and merchantable, and this suit was for the price of the unpaid portion, or that which they alleged to be unsound corn. Defendants relied upon showing as a defence that they and plaintiffs, at St. Louis, on the eighteenth of April, 1865, came to an understanding and agreement that defendants were to pay for the sound, but not for the unsound, corn; and that what was unsound was to be determined by what was rejected by the government inspector at Cairo. They testified on the trial that such was the fact, and that an order was given by them to plaintiff Mansfield, on the freight agent of the Illinois Central Railroad at Cairo, to deliver the rejected corn to warehousemen, for plaintiffs' disposition. Mansfield, on the trial, denied any such agreement, or any such order had been given. The preponderance of evidence was on the side of plaintiffs, in the opinion of the the jury, and the verdict was for them.

After the trial defendants discovered that plaintiffs and a

warehouse firm at Cairo had corresponded on the subject of the corn in question, and subsequent to the eighteenth of April, 1865, viz., the latter part of that month; and on this motion placed on file an original letter, in Mansfield's handwriting, which shows clearly that defendants did give an order to Mansfield, prior to the twenty-seventh of April, 1865, touching the corn in question, and its delivery by the freight agent of the railroad to warehousemen at Cairo. There is no way of determining its precise import, but, *prima facie*, it is the one testified to by defendants on the trial, and if it had been produced in evidence, must, we think, have changed the verdict. Defendants, prior to the trial, gave notice to plaintiffs to produce the order of April 18, 1865, after having applied to the railroad freight agent at Cairo for it, and been by him informed that he had received no such order. Defendants, therefore, had a right to believe that plaintiffs still held it, and that a notice to produce would secure it at the trial. They had no reason to suppose that plaintiffs had sent the order to a warehouseman at Cairo, as it was addressed to the freight agent of the railroad, and therefore were surprised at the trial by its non-production, and by the testimony of Mansfield wholly denying that he had received such order, or knew anything about one having been given. He did know an order touching that corn had been given. He knew that he had held it, and had transmitted it by letter to Halliday Brothers, warehousemen at Cairo, and that it was drawn on the freight agent and was made by defendants. It is manifest that the order was for the delivery of the corn in question to Halliday Brothers, if we look at their letters in reply to Mansfield of date respectively April 25 and 27, 1865, for in them Halliday Brothers object to receiving the corn on plaintiffs' account. Mansfield gave no intimation that there was any order whatever, denied the existence of one, and gave the court and jury to understand that defendants' testimony on that subject was altogether and entirely untrue. If the order was not of the precise nature or import testified to by defendants, and yet an order was given at St. Louis April 18, 1865, the jury was entitled to know that fact, and

it could not have failed to exercise considerable influence, especially if plaintiffs, knowing who held it or to whom it was by them sent, failed to produce it or show that they had tried to do so. Defendants applied after the trial to Halliday Brothers, who could not find the order, but gave them the correspondence alluded to between themselves and plaintiffs, and their affidavit. The new testimony is regarded as not only material, but of a character to have prevented a verdict for plaintiffs; and it is not seen how defendants can be said to have been otherwise than surprised on the trial by the non-production of the order, or of information of its whereabouts, and plaintiff Mansfield's testimony wholly denying the existence of any order of the kind. Mansfield's death ought not to be a sufficient reason for perpetuating a verdict thus obtained.

A new trial is granted, but on the terms that defendants pay the taxable costs of the trial.